## WILLIAM CLAPP v. CITY OF BURLINGTON.

### *National Banks.   Taxation.*

Stocks in national banks located in this state should be set in the grand list to the owner in the town or city where he resides, in accordance with the provisions of our statute, which is not in conflict with the act of Congress of June 3, 1864, creating the national banking system.

The proviso to the 41st section of said act of Congress was only intended to confine the power of taxation of shares of stock in national banks to the state having jurisdiction at the place where the bank is located, and is for the sole purpose of determining what state shall have jurisdiction to tax the owners of the said stock for the same.

GENERAL ASSUMPSIT for money had and received, money paid, etc., and trial by the court, September term, 1868, upon the following agreed statement of facts:

That the said city of Burlington had duly accepted the act of incorporation, and the acts in amendment thereof, and had organized under the same, prior to the year 1866 ; that on the first day of April, 1866, the plaintiff was a resident of said city, that in the same year he was set in the grand list of said city, by the assesors of said city, in the sum of $374.55 ; that said sum was made up and set in said list upon the following personal estate then owned by the plaintiff, to wit :

Fifty-six shares of stock in the National Union Bank, Swanton, appraised at $2,730 ; two hundred and fifty shares in the Vermont National Bank, St. Albans, appraised at $24,375 ; other personal estate appraised at $10,150, and one poll of $2, making a grand list of $374.55 ; that of said list of $374.55, $271.05 was assessed upon said shares of stock, and said banks as aforesaid ; that N. B. Flanagan, then collector of taxes of said city, had in his hands on the 1st day of February, 1867, rate-bills and warrants for the collection of city, highway and union school taxes, amounting to $400.73, which was assessed against the said plaintiff upon said list of $374.55, as follows, to wit : city tax $280.87, highway tax $74.91, and union school tax $44.95 ; that afterwards, on the 1st day of February, 1867, the plaintiff paid said taxes under protest, to said Flanagan as such collector ; that afterwards and before the commencement of this suit, the said Flanagan, as such collector, paid over said taxes, as directed by said rate-bills and warrants.

It is further agreed that the said National Union Bank, and the said Vermont National Bank, were, at the time when the said stock in said banks was set in the list and said taxes assessed thereon against the plaintiff as aforesaid, banking associations duly incorporated and organized under the laws of Congress, and that said National Union Bank was located and doing business at Swanton, and the said Vermont National Bank was located and doing business at St. Albans, in said county of Franklin. But the plaintiff's stock in said bank was not, nor was any of it, set in the list in any other place than Burlington, in the year 1866, nor were any taxes thereon paid, for that year, except as above stated.

Upon the facts above expressly stated and agreed to, the county court, WILSON, J., presiding, pro forma, decided that the plaintiff was not entitled to recover, and rendered judgment for the defend-ants, to which the plaintiff excepted.

*Bailey, Davis & Adams*, for the plaintiff, cited *City of Utica* v. *Churchill et al.*, 33 N. Y., 162, 229, 243 ; *Markoe* v. *Hart-ranft*, Am. Law Reg., Vol 6, 487, Vol. 5, 609.

*E. R. Hard*, for the defendants.

Heard at the January term, 1869.

The opinion of the court was delivered by

PIERPOINT, C. J. The agreed statement of facts, upon which the judgment of the court below was based, presents the distinct question, where, in this state, shall the owner of shares of the stock in the National Banks located in this state be taxed ? whether in the town or city where the owner resides, or in the town or city where the bank is located ?

Under the statutes of this state regulating the matter of taxation, etc., no question is made but that the place where the owner of such stock resides is the place where such stock shall be set to him in the grand list, and he be subject to taxation thereon ; but it is insisted on the part of the plaintiff that the provisions of our statute, in this respect, are at variance with and contrary to the requirements of the act of Congress, of June 3, 1864, creating the national banking system, and under which said national banks were organized. The portion of said act which bears upon this question is contained in the proviso to the 41st section, and is as follows : " Provided that nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in assessment of taxes imposed by or under state authority at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other monied capital in the hands of individual citizens of such state ; provided further that the tax so imposed under the laws of any state, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located."

There is nothing in the case to show that there was any violation of the foregoing provision in taxing the plaintiff for his stock in the banks referred to unless it was in putting said stock in his list, and taxing him, in Burlington where he resided, instead of the towns where the banks were located; and in determining whether there was a violation of the law in this respect, it becomes necessary to enquire what Congress meant by the words used in the passage above quoted, "*at the place where such bank is located.*" The word "place" is a very indefinite term. It may refer to a very small or to a very large space, and must be construed with reference to the connection in which it is used, the subject matter spoken of, and the object in view. It is manifest that it was the intention of Congress by this provision to impose certain restrictions upon the state governments, in respect to the taxation of the owners of the shares in national banks, so as to prevent unjust and unequal taxation, that it was anticipated might result from the action of state governments, that were hostile to the system. This we think was the sole object of the provision, and to this end it is provided, among other things, that the stock shall be taxed by or under the authority of the state at the place where the bank is located, and not elsewhere. The purpose was to prevent the same stock being taxed in two different states, as is sometimes done in respect to stock in the state banks, when the bank is located in one state and stock therein owned by the inhabitants of another, both states taxing the stock. It was anticipated that the stock in the national banks might be so taxed, hence this provision confining the power to tax the stock to the state having jurisdiction at the place where the bank is located. We think that this reference to the place where the bank is located is for the sole purpose of determining what state shall have jurisdiction to tax the owners of the stock therein for such stock, and when this was done the end in view was accomplished. We can hardly conceive it possible that it was the intention of Congress to interfere with or to regulate the internal system that might be adopted by the respective states, for the assessment and collection of the taxes, any

further than to prevent an unjust discrimination against the stock-holders in the national banks. The general government could have no interest, or object, in determining into the treasury of which particular municipal government, within the state, the taxes should go, after they have been properly assessed and collected, and we are not disposed to put a construction upon the act that would convert it into such an attempt. In the provision referred to, Congress is speaking of the powers of the respective states over the stock in these banks, in respect to taxing the owners, and its object was to secure equal and just taxation. The language used in respect to the authority to tax should be construed to refer to the action of the state legislatures, when it is susceptible of such a construction, rather than to the action of the officers of the several municipal corporations within the states. By so doing, all is accomplished that Congress designed, and the states left to reg-ulate their own system of taxation, in their own way, without the unnecessary, not to say offensive, interference by Congress therein. Congress could have no possible motive in determining in what particular town in this state the owner should be taxed for this stock; all that it desired was that it should be placed upon the same footing with other property of a like character in the state, and owned by the residents thereof.

It was probably considered desirable that the new system should recommend itself to public favor, and to that end it was doubtless thought best, while securing equal taxation, to leave the form and manner of doing it, and the disposition of the money raised thereby, to the respective states; that is, to interfere with the au-thority of the states only so far as was necessary to accomplish the object.

This question was recently decided by the supreme court of Massachusetts in *Austin* v. *The City of Boston*. The case will be reported in the next volume of Allen. The proof sheets are before me. Judge HOAR in delivering the opinion of the court says : " The court are all of opinion that the true construction of the proviso does not confine the assessment of the tax to the place where the bank is located, and that it merely requires that the

tax, to be valid, shall be imposed under the state authority existing at the place where it is thus located." Again he says : " We therefore think that the reference in the proviso to the place where the bank is located, was designed to define the state authority which was to be. allowed to impose a tax, and not to limit the place of assessment. By this construction we avoid a question of great difficulty in regard to the constitutional power of Congress to direct or regulate the mode of state taxation."

In *Markoe* v. *Hartranft*, decided in Pennsylvania, the decision is substantially in accord with our own, although the views expressed by Judge AGNEW in some respects differ from those above. The case of the *City of Utica* v. *Churchill et al.* is not an authority in this case, as it was decided upon the statute of that state, it being held that the taxation was in violation of their statute.

A majority of the judges of the supreme court of Maine, in answer to a question put to them by the Governor, as to a bill then before the legislature, put a different construction upon this proviso, but gave no reasons for the opinion expressed.

On the whole, we think the decision in *Austin* v. *The City of Boston* is in accordance with principle and reason, and with the views expressed by Judge HOAR we entirely agree.

This view renders it unnecessary to consider the other questions raised in the argument.

The judgment of the county court is affirmed.