MARY ANN LAW v. THE TOWN OF FAIRFIELD.

*Evidence. Sufficiency of Notice of Injury on Highway.*

What a witness who is not a party, states out of court, is not evidence in chief to prove that the fact is as stated by him; but can only be shown to discredit his testimony at the trial, when contrary to such statements.

The plaintiff gave the defendant notice, that she was injured on the road leading from Fairfield Centre to East Fairfield, on the 21st of June, 1871, and that she claimed damage; and it appeared that the distance between those two places, was four miles and a half. *Held*, that the notice was too indefinite as to the place of accident, and insufficient.

CASE for injury on a highway. Plea, the general issue, and trial by jury, and verdict for the plaintiff, ROYCE, J., presiding.

The evidence on the part of the plaintiff tended to show, that the highway, at the place where the accident was claimed to have happened, was insufficient, and out of repair; that there were large and deep holes in it, which were very .difficult to pass, and were of such a character as to render it unsafe and dangerous for a person to drive through them on a trot with a horse and wagon, and that considerable care was necessary in going through them with a team on a walk. The plaintiff testified that on the day of the accident, Michael Carey procured a team and invited her to attend a fair in the village of Fairfield, some seven miles from where she resided; that, in going to the fair, she saw and took notice of this place in the road, and that Carey had to drive slowly, on a walk, going through holes in the road; that she returned home from the fair in the night, passing this place in the road about one o'clock at night; that when she started with Carey for home, from Fairfield, she noticed he had been drinking, and that, fearing he would drive too fast, she sat on the left-hand side, and drove the horse, and as she came near these holes in the road, she noticed them, and knew them to be the same she passed through going to the fair, and saw a team immediately in front of her, drive through them on a walk; that she drove through them, on what she called a slow trot; and on cross-examination, she stated that she did not try to stop her horse, and as the forward wheels went into the holes, she was thrown out and injured.

55

The evidence on the part of the defendant tended to show, that said Carey, who was improved as a witness by the plaintiff, was in such a state of intoxication that he was unable to drive, and that that was the reason why the plaintiff drove. The defendant introduced other evidence, tending to show that said Carey had admitted, a week or two prior to the trial, that he was driving at the time of the accident. The plaintiff's evidence also tended to show, that her father was alone in a single wagon, in company with her, after they left Fairfield Centre, up to the place where the plaintiff was thrown out, a distance of two or three miles. Also, that she gave notice under the statute, within thirty days, of her claim for damages, and of the time and place of accident. The defendant introduced evidence tending to show that the only notice given was, that the plaintiff had been injured on the road leading from Fairfield Centre to East Fairfield, on the 21st day of June, 1871, and claimed damages, and that the distance between those points was four and one half miles. The defendant requested the court to charge the jury, among other things, as follows :

\* \* \* \* \* \* \* \* \* \*

2. "That if the jury find that Michael Carey, who was in the wagon with the plaintiff at the time of the accident, invited her to go to the fair with him, and any want of care and prudence on his part contributed in any, even the slightest, degree, to the injury of the plaintiff, she is not entitled to recover, even though the road was out of repair and insufficient."

\* \* \* \* \* \* \* \* \* \*

4. "That if the jury find that said Carey, who was in the wagon with the plaintiff at the time of the accident, had invited her to go to the fair with him, and that on the occasion of the accident, he was wanting in ordinary care and skill, or was guilty of negligence or want of ordinary care in driving, and such negligence or want of ordinary care contributed in any, even the slightest, degree, to the injury, the plaintiff cannot recover, although the road was out of repair and insufficient.

5. "That if the jury find that the notice given to the town was such as the evidence of the defendant tends to show, that such notice is insufficient in law, and the plaintiff is not entitled to recover."

The court refused to charge in accordance with said requests. In relation to the second and fourth requests the court charged as follows :

" Another question was made, and the court was requested to charge upon it, in reference to the condition of this Michael Carey. I understand that it was determined, substantially, in the case of *Carlisle et ux.* v. *Sheldon*, 38 Vt. 440, that when a man is a passenger in a stage coach, and the injury happens, partly through a defect in the highway and partly through a want of care, skill, and prudence on the part of the driver, so that his want of care, skill, and prudence, contributes to the happening of the injury, that that passenger, although he is perfectly innocent of that injury, being seated inside the coach, cannot recover against the town ; he is a passenger, and has a right of passage over the road. He may sue the proprietor of the coach, and recover of him, but, as far as the liability of tho town is concerned, that is a question between the town and the proprietor of the coach. Hence, they held in that case, that where Mrs. Carlisle was riding with her husband, and she jumped out of a wagon to avoid, as she supposed, a serious injury, and it turned out that the fault was upon the part of her husband, and his bad driving, that she could not recover ; she was a passenger then with him, and under his care, and it was not placed upon the ground of the peculiar relations that existed between man and wife, but upon other general—those that I have suggested. Applying the law as I understand it, to this case, if Michael Carey had been driving this horse, and had been drunk, or from any other cause this accident had happened in consequence of his want of care, prudence, and skill, this plaintiff would not be entitled to recover. That is as I understand tho law as settled in the case of Carlisle. I think that is in consonance with some English cases lawyers have had occasion to refer to for a great while ; but, in order to bring this case within that principle, if they attribute any fault to Carey, and that this fault was occasioned by his drunkenness, they ought to show in the first place, that he was drunk upon that occasion, and not simply that he had been drinking   Many men may drink some, and still be as competent to drive a horse, or transact any of the ordinary business of life, as though they had not been drinking at all. If thoy attribute the fault to that fact, that they must make out. Upon that, you have tho testimony of his associates, and of Capt. Kennedy, who testifies to his admission, made two or three weeks since, that he was drunk. It seems that he was sober enough to get out at that time and assist

the girl, and sober enough to drive the horse home after that. Even if he was drunk, and so drunk as to be incapable of driving, then if he had attempted to drive, and this accident had occurred in consequence of his bad driving, this argument might apply ; but it seems from the testimony that he did not touch the lines from the time they left Fairfield Center, until after the accident happened ; nor does it appear but that this plaintiff was competent to drive this team.   All the testimony is her own.   She says she was accustomed to drive horses from her childhood up.   I do not see where that principle can apply to this case, for I do not see any evidence in the case that would warrant the jury in saying that the conduct of Carey, upon that night, either drunk or sober, contributed to the happening of this accident.; and those facts you must find, in order to justify you in coming to the conclusion, which is claimed by the defendant's counsel, that he, in some way, contributed to this accident.   A man might have been dead drunk, and lain helpless, apparently, in the bottom of the wagon, and still not contributed to the happening of the accident ; and his mere lying there like a piece of pig-iron, might have contributed in some event to the accident."

In relation to the fifth request, the court charged the jury that the notice was sufficient, though it was as the defendant's evidence tended to show it.   To the refusal to charge as requested, and to the charge as given, the defendant excepted.

*Edson & Rand*, for the defendant.

The case shows that the plaintiff went to [the fair with Carey, and was under his care and protection ; and the defendant's evidence tended to show, that at the time of the accident, Carey was in such a state of intoxication as not to be able to drive, and, also, that he was driving or attempting to drive at the time.   The defendant had the right to go to the jury upon the question, as to whether he was driving or not, and was entitled to the charge as contained in his fourth request ; and in the refusal of the court to so charge, there was error.   The court erred in instructing the jury, that there was no evidence in the case that would warrant them in saying that the conduct of Carey, either drunk or sober, contributed to the happening of the accident, when the defendant's evidence tended to show that he was so much intoxicated as to be unable to drive, and was driving, or attempting to, at the time ;

and it was conceded the team went through this hole on a slow trot, and that it was of such a character as to render it unsafe and dangerous for a person to drive through with a horse and wagon upon a trot, and that considerable care was necessary in going through with a team on a walk. Under a proper charge, the jury might, and probably would, have found that Carey was driving at the time of the accident, and, if not positively drunk, so far intoxicated that driving through the hole on a trot—an act conceded to be dangerous—was not only gross negligence, but utter carelessness. The court erred in saying to the jury, "they ought to show in the first place that he was drunk upon that occasion, and not simply that he had been drinking," when the defendant's evidence tended to show that he was drunk. The defendant had the right to go to the jury upon the question, as to whether he was driving at the time of the accident or not, and as to the degree of intoxication he was under, and whether that intoxication contributed to the accident. These were purely questions of fact for the jury, and the court erred in not submitting them to the jury. What is reasonable skill, proper care and diligence, and whether the want of it in any degree contributed to the accident, are only to be determined by the jury. *Willard* v. *Newbury*, 22 Vt. 458; *Beers* v. *Housatonic R. R. Co.* 19 Conn. 566; *Benhart* v. *R. & S. R. R. Co.* 32 Barb. 165; *Phil. & R. R. R. Co.* v. *Spearen*, 47 Penn. St. 300; *Button* v. *Hudson River R. R. Co.* 18 N. Y. 248.

The court erred in commenting upon the testimony of the plaintiff, merely saying, "But it seems that he did not touch the lines from the time they left Fairfield Center until after the accident," when defendant's evidence tended to show Carey was driving at the time.

The court erred in not charging according to the defendant's second request. The case finds that the plaintiff was under the care and protection of Carey, and he was responsible for her safety, and any want of care on his part is attributable to her, and comes clearly within the principle laid down in *Carlisle* v. *Sheldon*, 38 Vt. 440, and *Holly* v. *Boston Gas Light Co.* 8 Grey, 123.

The court erred in not charging in accordance with the defend-

ant's fifth request. The statute in regard to giving notice is clear and explicit; its intent and meaning obvious; its object clearly apparent. The person must describe the place *where*, with reasonable certainty, having reference to the highway, whether a new one, and passing through a new and sparsely settled portion of the town, and having few natural objects to designate the *place;* or an old highway, and through a part of the town which has been long and thickly settled, and with well known farms and farmhouses and out-buildings, to aid in describing the place *where*, in order that the selectmen may find it, and make the needed repairs. *Kent* v. *Lincoln*, 32 Vt. 591; *Church et al.* v. *Westminster*, 45 Vt. 380.

*E. A. Sowles, F. W. McGettrick,* and *R. C. Benton,* for the plaintiff.

There can be no doubt as to the correctness of the charge as to the notice, excepting as to " the place where," &c. PIERPOINT, Ch. J., in *Clapp* v. *Burlington*, 42 Vt. 582, says: " The word *place* is a very indefinite term. It may refer to a very small or to a very large space, and must be construed with reference to the connection in which it is used, the subject-matter spoken of, and the object in view." This language was used in construing a United States statute as to " the place where" national banks could be taxed, which in this case was held to mean the state where the bank was located. The language to be construed is identical in the two cases. It would therefore seem improbable that the court should hold in the one case, that " the place where" might embrace a large state, and in the other a small circumscribed " spot," susceptible of description by metes and bounds, as claimed by defendant. It would rather seem to mean *the road where the injury occurred*, so that a stranger residing at a distance, receiving an injury on the highway in the night-time, without any particular objects in the vicinity by which to indicate the spot where the injury occurred, and unacquainted with any of the landmarks, might give notice, describing the road as leading from one place to another, as in this case. The object in view would seem to be three-fold, as appears from *Kent* v. *Lincoln*, 32 Vt. 596.    1.

That the fact of the injury may be known to the town. 2. That an examination of the highway may be made, before the condition of the road has been entirely altered, so that the actual condition of the road at the time of the injury may be shown. 3. And that the town may be put upon inquiry to ascertain all the circumstances attending the injury complained of. The liability of the town is in consequence of a defective highway, as well as of a defective " spot" in the highway.

The court charged properly in regard to Carey, who was in the wagon with plaintiff at the time of the injury. The simple fact that there was evidence tending to show that he was intoxicated, would not warrant the court in charging the jury as the defendant requested, when he was not driving, and especially in the absence of any and all testimony tending to show that such intoxication contributed in any, even the slightest, degree, to the injury. *Hunt et ux.* v. *Pownal,* 9 Vt. 411 ; *Cassedy* v. *Stockbridge,* 21 Vt. 391. The only possible claim that can be urged by the defendant is, that Carey should have been driving the horse at the time, and that in this there was negligence. This would apply with equal force if he had stopped at Fairfield Center over night, and the plaintiff had pursued the journey alone, and received the injuries. This cannot be seriously urged.

The opinion of the court was delivered by

Ross, J. I. The only pretended evidence that Carey was driving the team at the time of the accident, was that of some witness for the defendant, who testified that within a few days of the trial, Carey had admitted he was driving. Carey was not a party to the suit. Hence, this admission, if made by him, could not be received or considered as evidence in chief, to establish the fact that he was driving. He had been improved as a witness for the plaintiff, but whether he had denied, while testifying, that he was driving at the time the accident occurred, does not appear. If, as is probable, he had made such a denial, this evidence was admissible to discredit him as a witness, and could not have been received nor considered for any other legitimate purpose. There was, therefore, no legitimate evidence that Carey was driving the

team when the accident occurred, and hence, no foundation in the evidence for the second and fourth requests made by the defendant. Carcy had invited the plaintiff to accompany him to the fair; and, on her acceptance of the invitation, he had conveyed her to the fair. If the accident had happened while he was driving the team, and when she was accompanying him, and was under his care and safe conduct, these requests would have been pertinent. But as, at the time of the occurrence of the accident, she was driving the team, and he was in her care, and was accompanying her, and not she him, there was no evidence in the case to which these requests could be legitimately applied, and for that reason the court properly refused to charge in accordance with them.

II. The act of 1870 so far changed the law in regard to notice, as to require the notice to be " in writing," " stating the time when, and the place where, such injury was received." The question raised is, whether a notice informing the town that the accident happened somewhere on a highway four and a half miles in length, and conveying no more definite information of the place, is a sufficient stating of the place where the injury was received, to answer the requirements of the statute. The language of the statute is quite indefinite. The word *place* is a very indefinite term. It is applied to any locality, limited by boundaries, however large or however small. It may be used to designate a country, state, county, town, or a very small portion of a town. The extent of the locality designated by it, must, generally, be determined by the connection in which it is used. In this statute, it is used in connection with the highways in a town, and was intended to designate some locality within the boundaries of such highways. The liability of a town for damages sustained by a traveller, is limited to such highways as the town is obliged to maintain, which, usually, is confined to the highways within the town. It is evident, therefore, that *place*, as used in the statute, is intended to be confined to a locality less extensive than the entire highways in the town. But, how narrow a locality on the highway was intended to be designated by the word *place*, it is difficult to determine. The natural objects by which the local-

ity of the injury can be definitely described, will vary very much in different cases. The knowledge which the injured party has, or might obtain, of such natural objects, will not always be the same. If the time of the accident were the night, and the occasion the first passage of the party receiving the injury, over the highway, he might have, or be able to obtain, but limited means of describing the exact locality which occasioned the injury. It would be a harsh, not to say an unjust, application of the statute, to limit its language to so narrow a locality as to deprive an injured party of the right of recovery where he has given the town the best description of the precise place occasioning the injury which it was in his power to give. Such, evidently, was not the intention of the legislature. The object to be effected by the passage of the statute was in the interest of the town. Before the passage of this statute, the person sustaining an injury through the insufficiency of a highway, was simply required to notify one of the selectmen of the town, within thirty days, of the injury, that he had sustained damages, and should require satisfaction of the town. This notice was first required, by statute, in 1855. The law, before the act of 1870, left the town to ascertain, as best it could, the place where the insufficiency existed. The act of 1870 requires the notice to be in writing, and that it state the time and place where the injury was received. All the provisions of the act of 1870, manifest a purpose on the part of the legislature, to require a more certain and specific notice to be given, and such a notice as would fairly—and, under all the circumstances of the particular case, reasonably—inform the town of the locality in which the insufficient highway causing the injury, existed, so that the officers of the town, immediately after the injury, and before the surface of the highway has materially changed, might examine the place causing the injury, and judge of the sufficiency or insufficiency of the highway at that point; and thus be prepared to resist or yield to the claim of the injured party. Doubtless, the statute was intended to furnish to the town the same facilities for ascertaining the condition of the place causing the injury, which the injured party has, or could reasonably have; and so, enable it to secure testimony of its condition, before it

56

shall have passed from existence. It is manifest that no specific rule can be laid down which will govern all cases ; that the sufficiency of the notice in each case must be determined, to some extent, by the facts of that case. We do not think, under the circumstances of this case as developed in the exceptions, that the court, as matter of law, could hold that a highway four and a half miles in length, was a reasonable statement of the place where the injury was received. It threw upon the town, if it would find the exact locality of the insufficiency which caused the injury, the burden of examining the whole length of the highway named in the notice. Nor did the notice furnish the town any data by which it might certainly know that the particular locality it might fix upon, was *the place* at which the plaintiff received the injury. No facts are stated in the exceptions which rendered it unreasonable to require from the plaintiff a more definite and limited description of the place causing the injury. In the absence of all such facts, we think the court erred in holding that the notice, as the defendant's evidence tended to prove it, was sufficient. Judgment reversed, and cause remanded.