### YELLOWSTONE PARK TRANSP. CO. v. GALLATIN COUNTY et al.

District Court, D. Montana. July 2, 1928.

No. 468.

1. **Woods and forests** ⚖️8—Act creating Yellowstone Park did not create political entity, or segregate land in Gallatin county, Montana, from Montana territory; "set apart" (16 USCA § 21, 22; Act May 26, 1864, 13 Stat. 85; Act Mont. Terr. Jan. 12, 1872, [Laws, Memorials, and Resolutions 1871–72, p. 431, § 8]).

Act March 1, 1872, §§ 1, 2 (16 USCA §§ 21, 22), creating Yellowstone Park, with boundaries including land in Gallatin county, Montana, as bounded by Act Mont. Terr. Jan. 12, 1872 (Laws, Memorials, and Resolutions 1871–72, p. 431, § 8), did not segregate such land from territory of Montana, created by Act May 26, 1864 (13 Stat. 85), nor establish park as separate political entity; "set apart," in act creating park, being only more or less tautological synonym for "dedicated," importing segregation, not from Montana, but from other public lands.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Set Apart.]

2. **Woods and forests** ⚖️8—Gallatin county land included in Yellowstone Park held not segregated from Montana territory, in view of statehood act and state Constitution (Act Mont. Terr. Jan. 12, 1872 [Laws, Memorials, and Resolutions 1871–72, p. 431, § 8]; Act May 26, 1864 [13 Stat. 85]; 16 USCA §§ 21, 22; Act Feb. 22, 1889 [25 Stat. 676]).

Strip of land in Gallatin county, Montana, as bounded by Act Mont. Terr. Jan. 12, 1872 (Laws, Memorials, and Resolutions 1871–72, p. 431, § 8), held not segregated from Montana territory, created by Act May 26, 1864 (13 Stat. 85), by Act March 1, 1872, §§ 1, 2 (16 USCA §§ 21, 22), including it in Yellowstone Park, in view of Act Feb. 22, 1889 (25 Stat. 676), providing statehood for Montana "as at present described," and like description in Montana Constitution, on which state's admission to Union was proclaimed by President.

3. **Counties** ⚖️7—State act, excluding Yellowstone Park land from county, held unconstitutional (Acts Mont. 1913, c. 60; 16 USCA §§ 21, 22; Const. Mont. art. 16, §§ 1, 3).

Act Mont. 1913, c. 60, excluding from Gallatin county land included in Yellowstone Park by Act March 1, 1872, §§ 1, 2 (16 USCA §§ 21, 22), without including it in other counties, boundaries of which were likewise redefined thereby, *held* invalid so far as contravening Const. Mont. art. 16, §§ 1, 3, which authorize Legislature only to settle disputes concerning, or to change, common county boundaries, not to destroy them by excluding lands along them from both counties.

4. **Woods and forests** ⚖️8—Federal acts respecting jurisdiction over Yellowstone Park did not divest Montana of sovereignty and political jurisdiction over Montana land in such park; "exclusive control" (16 USCA §§ 21, 22, 24; Act Feb. 22, 1889 [25 Stat. 676]).

Act March 1, 1872, §§ 1, 2 (16 USCA §§ 21, 22), providing that Yellowstone Park, created thereby, shall be under exclusive control of Secretary of the Interior, and Act May 7, 1894 (16 USCA § 24), declaring that it shall be under sole and exclusive jurisdiction of United States, did not divest state of Montana of sovereignty and jurisdiction over all its area, including such strip, under Act Feb. 22, 1889 (25 Stat. 676), admitting such state to Union; "exclusive control" not importing legislative and judicial jurisdiction or political dominion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exclusive Control.]

5. **Taxation** ⚖️20—State statute, ceding to United States exclusive jurisdiction over land in national park, conditioned on notice of acceptance, never given, did not deprive county of right to levy taxes therein (Rev. Codes Mont. 1921, § 23; 16 USCA §§ 21, 22; Act Mont. Terr. Jan. 12, 1872 [Laws, Memorials, and Resolutions 1871–72, p. 431, § 8]).

Rev. Codes Mont. 1921, § 23, purporting to cede to United States exclusive jurisdiction over Montana land included in Yellowstone Park by Act March 1, 1872, §§ 1, 2 (16 USCA §§ 21, 22), but reserving right of taxation and conditioned on due notice of acceptance by United States, which was never given, did not deprive Gallatin county, of which such strip was made part by Act Mont. Terr. Jan. 12, 1872 (Laws, Memorials, and Resolutions 1871–72, p. 431, § 8), of right to levy taxes therein.

In Equity. Suit by the Yellowstone Park Transportation Company against the County of Gallatin and another. Decree for defendants in part, and for plaintiff in part.

T. B. Weir and Harry P. Bennett, both of Helena, Mont., for plaintiff.

E. F. Bunker, of Bozeman, Mont., for defendants.

BOURQUIN, District Judge. In this suit to enjoin taxes, the issue is of law, viz. wheth-

·er, in view of federal and local legislation, the situs of the property, which is in Yellowstone Park, is also in Gallatin county. The territory of Montana, with specifically defined boundaries, was created by Act May 26, 1864 (13 Stat. 85), with the superfluous declaratory proviso that the boundaries were subject to change. By Act of January 12, 1872 (Laws, Memorials, and Resolutions 1871–72, p. 431, § 8), the territorial Legislature likewise defined the boundaries of Gallatin county.

Yellowstone Park was created by Act March 1, 1872 (17 Stat. 32 [16 USCA §§ 21, 22]). Its boundaries included some 3,000 square miles of Wyoming and 200 square miles of Montana, the latter all lands between the north boundary of the Park and the south boundary of the territory, and likewise between the west boundary of the Park and the east boundary of a southern projection of the territory, a strip some 2 miles wide and 100 miles long. This narrow strip was wholly within the aforesaid boundaries of Gallatin county, and within it is the situs of the property aforesaid.

[1] The act creating the park amongst other things provides that the lands thereof are "reserved and withdrawn from settlement, occupancy, or sale, * * * and dedicated and set apart as a public park or pleasuring ground * * * under the exclusive control of the Secretary of the Interior * * * to make and publish such rules and regulations as he may deem necessary or proper" (16 USCA §§ 21, 22), in administrative management to further the object of the act.

Plaintiff's principal contention is that the latter act pro tanto impliedly repeals the act creating Montana, changes the boundaries of the territory to conform to those of the Park, segregates and excludes said narrow strip from the former and includes it in the latter, and establishes the Park as a territorial entity separate from all others.

If Congress had intended these anomalous results, it could have plainly said so. Both acts are special, and in the light of the general course of legislation, public lands, reservations, administration, and statutory construction, are consistent with the theory that the area of the Park remains part of the area of the territories within which are the lands by the act reserved for park purposes. "Set apart" is but a more or less tautological synonym for "dedicated," and both terms import, not segregation from Montana, but from other public lands, their last antecedent, and they serve to definitely appropriate the lands to the particular object of the reservation. They are of common use in like reservations, and have never been held to effect a segregation of the reserved lands from the territory of which they are a part, to create a separate political entity. This latter Congress has never done, and involves anomaly which should appear by clear and unmistakable terms before accepted.

[2] Moreover, Act Feb. 22, 1889 (25 Stat. 676), provides for statehood for Montana and other territories "as at present described." By this Congress must have intended the definite description in its express statutes, those creating the territories, rather than one to be gathered by doubtful implication from ambiguous statutes; and nowhere has the federal government ever described Montana other than as in the act creating the territory. Even the maps presently issued by the Secretary of the Interior so describe its boundaries. Likewise is the description in her Constitution, framed pursuant to the statehood act, and upon which Montana's admission to the Union was by the President proclaimed. It is noted that the act last aforesaid ignored the Park, unless its exclusion of sections 16 and 36 "in permanent reservations," from the grant of school lands, refers to the Park, which was then the only permanent reservation in Montana.

[3] Plaintiff also contends that, in any event, by Act of March 8, 1913 (Acts 13th Sess. p. 116), the state legislature defined anew the boundaries of Gallatin county, and therein excluded the aforesaid strip of Park lands. Said act was to redefine the boundaries of Gallatin and several other counties existing at admission to statehood, and to conform the boundaries of the others to those of Gallatin "as established by" the act, so far as their boundaries were in common. The boundaries of Gallatin are therein specifically defined, do exclude said strip of Park lands, and the boundaries of the other counties, likewise defined, do not include it. Why is immaterial, but probably to conform to boundaries evidently mistakenly marked and approved by county commissioners a few days previously. No subsequent legislation assumes to change the situation. It seems clear, however, that the act last aforesaid is invalid.

When the state was admitted, its entire area was within organized counties, and its Constitution (art. 16, §§ 1, 3), provides that the counties as then existing "are hereby declared to be the counties of the state until

otherwise established or changed by law"; that "in all cases of the establishment of a new county," it shall pay a proportion of the "liabilities of the county or counties from which it is * * * formed: Provided, that nothing in this section shall prevent the re-adjustment of county lines between existing counties." By these provisions, county organization, and incidental local self-government throughout the state, are assured to the people for all time. They limit the otherwise plenary legislative power to destroy altogether, to destroy only in the sense of re-establishment or change in process of creating anew.

As established, the counties are "counties of the state," and to endure until "otherwise established or changed"; that is, until partially or wholly transformed into other counties created, not to disorganize, but to reorganize, not to disestablish or abolish, but to re-form and perpetuate. In so far as is authority to readjust boundaries common to counties, the power and object is to settle disputes or to change, but not to destroy common boundaries by separation by lands excluded from both to create a no man's land between them, without county organization and local self-government. See State ex rel. Sackett v. Thomas, 25 Mont. 240, 241, 64 P. 503.

It follows that, in so far as Act March 8, 1913, contravenes these provisions of the state Constitution, it is void, and that, despite it, the strip of Park lands, situs of the property involved, remains in Gallatin county, where the Legislature placed it by the aforesaid Act of January 12, 1872.

[4] Plaintiff further contends that, though the foregoing be granted, the United States has plenary and exclusive jurisdiction over the Park, for that (1) the act creating it provides it "shall be under the exclusive control of the Secretary of the Interior"; and (2) by Act May 7, 1894 (28 Stat. 73 [16 USCA § 24]), Congress declares it "shall be under the sole and exclusive jurisdiction of the United States."

In brief answer, "exclusive control" imports only administrative authority to care for the proprietary interests of the United States in the lands, and not legislative and judicial jurisdiction or political dominion, which is beyond the power of Congress to vest in the Secretary. Nor was such jurisdiction or dominion reserved to the United States in any act of Congress preceding statehood. The consequence is that Montana, admitted upon equal footing with all other states, thereby was vested with sovereignty and jurisdiction over all its area, and including the aforesaid strip of the Park, which without the state's valid consent cannot be diminished or impaired by said Act May 7, 1894, or at all. To the extent by said Act attempted it is void. See U. S. v. Grimaud, 220 U. S. 516, 31 S. Ct. 480, 55 L. Ed. 563; U. S. v. McBratney, 104 U. S. 623, 26 L. Ed. 869; Ft. Leavenworth, etc., Co. v. Lowe, 114 U. S. 526, 539, 5 S. Ct. 995, 29 L. Ed. 264.

[5] Plaintiff cites section 23, R. C. Montana, which purports to cede to the United States "exclusive jurisdiction" over said strip of the Park. Certainly this statute, if valid, aids plaintiff none, for that (1) it reserves the right of taxation, and (2) is conditioned upon due notice of acceptance by the United States, which notice has not been given. So whether the statute is valid is presently immaterial, though the like issue is likely to be presented in respect to some national park at any time. It may be observed, however, that the Legislature has power to in effect cede such jurisdiction, and the United States to accept in respect to limited areas for "forts, magazines, arsenals, dockyards, and other needful Buildings," is the intent of article 1, section 8, Federal Constitution. But that by construction, implication, or otherwise the power extends to large areas of the state and the inhabitants thereof, for a federal "public park or pleasuring ground" like Yellowstone Park, is at least doubtful.

Grant the extension, and the cession may embrace not 200 square miles, but 2,000 or 20,000, not a mere strip of Gallatin county, but all of it, or all of the state, not for needful purposes ejusdem generis with those in the Constitution named, but for mere luxuries, their antipodes, golf links, ball parks and what not—and therein destroy the people's sovereignty and their citizenship. And the unanswerable force of the argument cannot be evaded, and the inevitable logical consequence escaped, by any the usual time-worn weak and futile face-saving expedient— "that case will be decided when we meet it."

In conclusion, the taxes imposed by Gallatin county are valid, and decree goes for it and its treasurer, defendant. None the situs of the property in defendant Park county, to that extent decree is for plaintiff.