LEWIS, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO. ET AL., APPELLANTS.

(No. 2,454.)

(Submitted November 8, 1907. Decided November 23, 1907.)

[92 Pac. 469.]

| 36 | 207 |
|----|-----|
| 37 | 89 |
| 38 | 248 |
| 38 | 368 |
| 36 | 207 |
| 39 | 24 |
| 36 | 207 |
| 41 | 293 |

*Corporations—Railways—Constitution—Statutory Construction —Master and Servant—Personal Injuries—New Trial—Excessive Damages.*

Corporations—Charters—Power of Legislature to Amend.
1. While corporations are persons, they are not such for all purposes. They have no inalienable rights. Being creatures of the statute, the legislature may, under the Constitution (Art. XV, secs. 2, 3), enact any legislation by way of amendment of the law creating them, which does not violate the rule that property acquired under the operation of their charters cannot be taken away, and that contracts made in like manner may not be impaired.

Same—Railways—Liability to Employees—Statutes—Constitution—Equal Protection of Laws.
2. *Held,* that the enactment of Chapter 83 of Laws of 1903, page 156, relative to the liability of railway corporations for damages sustained by an employee by reason of the negligence of certain of his therein enumerated coemployees, is a valid exercise of legislative power, under Article XV, sections 2 and 3 of the Constitution, reserving to the state the right to alter or amend corporate charters theretofore granted; and that, therefore, the Act is not open to the objection that it deprives railway corporations of the equal protection of the laws, guaranteed to all under the Fourteenth Amendment to the United States Constitution, by subjecting them to liabilities not imposed upon natural persons or other corporations engaged in the same pursuit.

Same—Power of Legislature to Destroy.
3. *Obiter:* Under the right reserved to the state by sections 2 and 3, Article XV of the Constitution, the legislature may not only alter

corporate charters, but, if deemed expedient, destroy the corporate body.

:Same—Statutory Construction—Constitution—Equal Protection of Laws.
4.   The general purpose of the Act above being to protect railroad employees in their particularly hazardous employment, it might be held not to violate the equal protection of the law clause of the United States Constitution, under the rule of statutory construction that, where the general purpose of a statute has been ascertained, general words may be restricted to a particular meaning, or those of a restricted meaning expanded so as to embrace the general purpose and effectuate it,—by holding, that the expression "railway corporation," therein found, includes all persons, both individual and corporate, engaged in operating railways.

Foreign Corporations—Privileges.
5.   Foreign corporations doing business in the state are not entitled to any greater rights than are enjoyed by domestic corporations engaged in the same kind of business.   (Const., Art. XV, sec. 11.)

Personal Injuries—Excessive Damages—Jury—Abuse of Discretion.
6.   In personal injury cases, the amount to be awarded is left to the fair discretion of the jury, under the facts of the particular case, and damages so awarded, even if comparatively large, will not be held determinative of an abuse of such discretion, unless so disproportionate to the injury complained of as to shock the moral sense.

Same—Excessive Damages—When not Ground for New Trial.
7.   Where an amount awarded by the jury for personal injuries, claimed by defendant to have been so excessive as to amount to an abuse of the discretion lodged in it, may have been the result of a miscalculation, or based upon a wrong standard, the award cannot be said to have been the result of passion or prejudice so as to entitle the defendant to a new trial under subsection 5 of section 1171 of the Code of Civil Procedure.

:Same—Excessive Damages—New Trial—Remission of Excess—District Courts.
8.   *Held*, that the district court, in an action for damages for personal injuries alleged to have been suffered by plaintiff, a brakeman on a railroad, through the loss of his left hand, was justified in granting a new trial conditioned upon the remission of $7,400 from a verdict for $17,400, and in thereafter, with plaintiff's consent, scaling it to $10,000, and that such latter amount was not excessive in view of all the circumstances in the case.

:Same—Damages—Elements—Impairment of Earning Capacity.
9.   In arriving at a verdict in a personal injury case, the jury, in addition to the mental and physical pain suffered by plaintiff, and the disfigurement of his person, should also take into consideration, where earning capacity depends upon bodily strength, the fact that his physical condition becomes impaired by advancing age, and that, as a consequence, his earning capacity is diminished thereby.

*Appeal from District Court, Broadwater County; Frank Henry, Judge.*

ACTION by S. L. Lewis against the Northern Pacific Railway Company and one of its locomotive engineers for damages for

personal injuries. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

*Messrs. Wallace & Donnelly,* for Appellants.

Section 1 of Chapter 83 of the Laws of 1903 violates the Fourteenth Amendment of the Constitution of the United States, in that it denies to railway corporations the equal protection of the laws. The extra hazard to which railway employees are exposed in the operation of trains is a reason for the enactment of statutes imposing upon those who operate them liability to one employee for injuries due to the negligence of a fellow-employee. But to be valid such statutes must impose this liability upon all who do or who may operate them, individuals, associations and corporations alike. And the legislature of this state appears to have recognized this, for, by the fellow-servant Act of 1905 (Laws 1905, Chap. I), "every person or corporation operating a railway or railroad in this state" is made liable for injuries sustained by one employee through the negligence of another. (See *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666.)

When, as in this case, it plainly appears that the verdict is not a fair and impartial one, the court in reducing it should not leave it large because it was originally large, but should reduce it to a figure approximating what courts generally have held to be the maximum amount that could be recovered for like injuries. (See *Kennon* v. *Gilmer,* 5 Mont. 273, 51 Am. Rep. 45, 5 Pac. 847; *Rodney* v. *St. Louis etc. Ry. Co.,* 127 Mo. 676, 28 S. W. 887; *Thompson* v. *Railway Co.,* 71 Minn. 89, 73 N. W. 707; *Struble* v. *Railway Co.,* 128 Iowa, 158, 103 N. W. 142; *Brown* v. *Southern Pac. Ry. Co.,* 7 Utah, 288, 26 Pac. 579; *Campbell* v. *Wheelihan-Weidauer Co.* (Wash.), 89 Pac. 161; *Stiller* v. *Bohn Mfg. Co.,* 80 Minn. 1, 82 N. W. 981.)

*Messrs. Walsh & Nolan,* for Respondent.

Debate on the question of the constitutionality of a statute of the character of the Act of 1903 is foreclosed by the decisions

of the supreme court of the United States. (*Missouri Pacific: Ry. Co.* v. *Mackey*, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Minn. & St. Louis Ry. Co.* v. *Herrick*, 127 U. S. 210,. 8 Sup. Ct. 1176, 32 L. Ed. 109; *Tullis* v. *Lake Erie & W. R. R. Co.*, 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192.)

Laws of the same general character, imposing burdens upon railroad corporations without, in terms, subjecting individuals engaged in operating railroads to the same liability have been sustained by the court of last resort in *Missouri Pac. Ry. Co.* v. *Humes*, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *St. Louis & S. F. Ry. Co.* v. *Mathews*, 165 U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611; *Minn. & St. Louis Ry. Co.* v. *Beckwith*, 129 U. S. 26,. 9 Sup. Ct. 207, 32 L. Ed. 585; *Minn. & St. Louis Ry. Co.* v. *Emmons*, 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; *C. R. & P. Ry. Co.* v. *Zernecke*, 183 U. S. 582, 22 Sup. Ct. 229, 46 L. Ed. 339; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Lightheiser* (Ind.), 78 N. E. 1033; *Schus* v. *Powers-Simpson Co.*, 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887; *Union Pacific Ry. Co.* v. *De Busk*, 12 Colo. 294, 13 Am. St. Rep. 221, 20 Pac. 752, 3 L. R. A. 350.

The basis of these decisions is that the statute does make an individual, should there occur so extraordinary a thing as an individual operating a railroad, liable as well as a corporate being, the intent and purpose of the Act being looked to. The conclusion is enforced by the almost uniform holding that under these statutes making railroad corporations liable, a receiver operating a railroad is likewise answerable (*Wall* v. *Platt*, 169 Mass. 398, 48 N. E. 270; *Mikkelson* v. *Truesdale*, 63 Minn. 137, 65 N. W. 260; *Peirce* v. *Van Dusen*, 78 Fed. 693, 24 C. C. A. 280; *Rouse* v. *Harrey*, 55 Kan. 589, 40 Pac. 1007); as are mortgagees similarly engaged (*Daniels* v. *Hart*, 118 Mass. 543),. and trustees (*Union Trust Co.* v. *Kendall*, 20 Kan. 515).

Corporations do not come within the purview of the clause of the Fourteenth Amendment, that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." (*Orient Ins. Co.* v. *Daggs*,

172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; *Pittsburgh C. C. & St. L. Ry. Co.* v. *Lightheiser* (Ind.), 78 N. E. 1033-1039.) And the right of the state to lay down terms and conditions upon which a foreign corporation may operate within the state is no longer open to dispute. (*Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657; see, also, *St. Louis I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 402, 19 Sup. Ct. 412, 43 L. Ed. 746.)

Rulings sustaining verdicts for amounts in excess of the judgment in this case, as it now stands, for the loss or disablement of a hand, will be found at page 369 of 4 Thompson's Commentaries. See, also, the following cases: *Scheu* v. *Penn. K. R. Co.,* 141 Fed. 495; *St. Louis I. M. & S. Ry. Co.* v. *Sparks* (Ark.), 99 S. W. 73.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff to recover damages for the loss of his left hand, sustained while in the employ of the defendant company. It is alleged that the injury was occasioned by the negligence of the engineer of defendant's locomotive while drawing a train upon which the plaintiff was employed as a brakeman.

Plaintiff bases his right of recovery upon the provisions of the Act of the legislature of 1903 (Sess. Laws 1903, p. 156), rendering railroad corporations liable for injuries caused by the negligence of engineers. The trial resulted in a verdict and judgment for plaintiff for $17,400. The defendant moved for a new trial upon the ground, among others, of excessive damages appearing to have been given under the influence of passion or prejudice. The court entered an order granting the motion, unless plaintiff would within ten days remit $7,400 of the verdict and judgment. This was done. Thereupon the motion was denied. The defendant has appealed from the judgment and order.

The specifications of error made in the brief are two: (1) The court erred in denying the motion of defendant for a directed verdict in its favor; and (2) the court erred in denying the defendant's motion for a new trial.

Under the first specification the contention is made that the Act of the legislature referred to is obnoxious to that clause of the Fourteenth Amendment to the Constitution of the United States which prohibits the states from denying to any person within their respective jurisdictions the equal protection of the laws. The Act is entitled: "An Act to determine the liability of employers in this State for damages to employees." The first section thereof, which declares the rule applicable to railway corporations, provides: "Every railway corporation including electric railway corporations, doing business in this state, shall be liable for all damages sustained by an employee thereof, within this state, without contributing negligence on his part, when such damages is [are] caused by the negligence of any train dispatcher, telegraph operator, superintendent, master mechanic, yardmaster, conductor, engineer, motorman or of any other employee who has superintendence of any stationary or hand signal."

Conceding that it is within the legislative discretion to change the fellow-servant rule of liability as declared under the common law, counsel insist that, since this provision mentions in terms railway corporations only, and does not include natural persons or other corporations engaged in operating railways, the former are subjected to penalties and liabilities which natural persons and other corporations engaged in the same pursuit are not subjected to. Such statutes have frequently been the subject of controversy before the state and federal courts.

A statute of Iowa provided: "Every railroad company shall be liable for all damages sustained by any person, including employees of the company in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employees of the corporation to any person sustaining such damage." In the case of *McAunich* v. *Mississippi etc. R. R. Co.,*

20 Iowa, 338, the contention was made that this was obnoxious to the clause of the state Constitution requiring uniformity in the operation of general laws, and prohibiting the granting of special privileges or immunities to any citizen or class of citizens, which, upon the same terms, should not equally belong to all citizens. It was also contended that the statute was a special law, and therefore obnoxious to another constitutional provision prohibiting special or local laws. All of these contentions were overruled, the court holding that it applied to all railroad corporations alike, and was, therefore, of uniform operation throughout the state.

In the later case of *Bucklew* v. *Central Iowa Ry. Co.*, 64 Iowa, 603, 21 N. W. 103, the contention was made that the same or a similar statute was obnoxious to the clause of the federal Constitution now under consideration, for the reasons urged in *McAunich* v. *Mississippi etc. R. R. Co.*, *supra;* but the contention was held to be without merit, because the Act applied to all corporations or persons engaged in operating railroads. The decision in *McAunich* v. *Mississippi etc. R. R. Co.*, *supra*, was held to be controlling, for the reasons that the provisions of the Constitution of Iowa, above referred to, were in effect the same as the clause of the Fourteenth Amendment, which is invoked here.

The validity of this law was again brought in question in the case of *Herrick* v. *Minneapolis & St. L. Ry. Co.*, 31 Minn. 11, 47 Am. Rep. 771, 16 N. W. 413. The plaintiff, in the employ of the defendant in Iowa, was injured by the negligence of the engineer in charge of a train while he was engaged in coupling cars. An action for damages for the injury was instituted in Minnesota, which resulted in a verdict and judgment for the plaintiff. The contention made in that case was the same as in this. The court disposed of it by saying: "If a state, in view of the peculiar nature of the service upon railroads, and the danger incident to it, shall, as a matter of state policy, require these corporations, which are the creatures of its statutes, to assume the risk of injuries to

their servants resulting from the negligence of fellow-servants also in their employ, we think they have a right to do so. Statutes imposing special duties and liabilities upon railroad companies are to be found on the statute books of almost every state, and, if general in their application to all such corporations, they are valid." On a second appeal the same contention was made and decided adversely to the defendant. (32 Minn. 435, 21 N. W. 471.) On error to the supreme court of the United States this judgment was affirmed (*Minneapolis & St. L. Ry. Co.* v. *Herrick,* 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109), the court basing its judgment on the case of *Missouri Pac. Ry. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, in which the same contention was made with reference to the statute of Kansas, enacted in 1874, and declaring: "Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage." After disposing of the contention that the Act deprived the defendant of its property without due process of law, the court said of the contention made here: "The objection that the law of 1874 deprives the railroad companies of the equal protection of the laws is even less tenable than the one considered. It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition; but nothing can be further from the fact. The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application. * * * And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions." Then, after citing authorities to the effect that corporations are persons within the meaning of the Fourteenth Amendment, the court continues: "But the hazardous character of the business of operating a railway

would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees, as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees, and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities."

In *Pittsburgh C. C. & St. L. Ry. Co.* v. *Montgomery*, 152 Ind. 1, 71 Am. St. Rep. 301, 49 N. E. 582, 69 L. R. A. 875, the supreme court of Indiana had before it an Act of the legislature of that state declaring that every railroad or other corporation, except municipal corporations, operating in the state, shall be liable for damages for personal injury suffered by any employee while in its service, the employee injured being in the exercise of due care, "where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch-yard, shop, roundhouse, locomotive engine, or train, upon a railway, or where such injury was caused by the negligence of any person, coemployee or fellow-servant engaged in the same common service in any of the several departments of the service of any such corporation, the said person, coemployee or fellow-servant, at the time acting in the place, and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct." It was contended, as in *McAunich* v. *Mississippi etc. R. R. Co.* and *Bucklew* v. *Central Iowa Ry. Co., supra,* that the Act was in violation, not only of the provisions of the state Constitution prohibiting the general assembly from granting "to any citizen, or class of citizens privileges or immunities, which upon the same terms shall not equally belong to all citizens," but also of the clause, *supra,* of the federal Constitution. Both contentions were overruled, the court citing the case of *Bucklew* v. *Central Iowa Ry. Co.* to the point that the provisions of the state Constitution embody the same principles as the equality

clause of the federal Constitution, and *Minneapolis & St. L. R. Co.* v. *Herrick* and *Missouri Pacific Ry. Co.* v. *Mackey,* to the point that such an Act in no wise infringes upon the latter.

Subsequently the court had before it the same statute, in *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Lightheiser* (Ind.), 78 N. E. 1033. The same contention was again overruled, the court disposing of it with the following comment: "The subject matter of the statute in question here, and its intent and purpose, so far as applicable to railroads, were to protect employees from the peculiar dangers and hazards in railroading [citing authorities]. Under the decisions cited the character of the employers is not a controlling factor. The statute is to be given at least a reasonable interpretation, one that will carry into effect the legislative intent. As we have shown, the basis of the classification of railroads by themselves was the hazardous and dangerous character of the employment of operating railroads, and this does not depend upon whether railroads are operated by corporations or by one or more persons. If the character of the employer within the meaning of the statute is not important—and the nature of the employment is the test to be applied in construing—the expression 'every railroad or other corporation operating within this state,' as applied to railroads, should, under the rule above stated, be enlarged and expanded so as to include any person, company, or corporation engaged in operating a railroad in this state."

This statute was before the supreme court of the United States in *Tullis* v. *Lake Erie etc. Ry. Co.,* 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192. The same contention was made, among others, as in the *Montgomery* and *Lightheiser Cases, supra.* The court accepted the construction announced by the supreme court of Indiana, disposing of the contention of the company by saying, through Chief Justice Fuller: "Considering the statute as applying to railroad corporations only, we think it cannot be regarded as in conflict with the Fourteenth Amendment."

An Act of the territory of Colorado provided: "That every railroad corporation operating its line of road, or any part there-

of, in this state shall be liable for all damages by fire that is set out or caused by operating any such line of road, or any part thereof, and such damages may be recovered by the party damaged by the proper action in any court of competent jurisdiction." In *Union Pac. Ry. Co.* v. *De Busk,* 12 Colo. 294, 13 Am. St. Rep. 221, 20 Pac. 752, 3 L. R. A. 350, it was contended, among other things, that this provision discriminated in favor of private individuals against railroad corporations, and thus deprived the latter of the equal protection of the laws. The court, after pointing out that the purpose of the Act was not to punish railroad corporations, but to declare upon whom the loss should fall in case damage by fire should ensue by the operation of railroads, held that the expression "railroad corporation" was used in a popular sense, as denoting any person engaged in operating a railroad, and therefore did not discriminate in favor of natural persons, in declaring a liability against railroad corporations only. The term "corporation" was then construed to include natural persons. The court stated that it felt bound to go thus far, because this was the obvious meaning of the legislature, and, further, because it must do so to avoid declaring the Act unconstitutional.

Several states of the Union have enacted laws of the same general character, imposing burdens and liabilities upon railroad corporations, without in terms subjecting natural persons to the same burdens and liabilities, and they have generally been sustained by their respective courts of last resort. (*Kansas Pac. Ry. Co.* v. *Peavey,* 29 Kan. 169, 44 Am. Rep. 630; *Missouri Pac. Ry. Co.* v. *Mackey,* 33 Kan. 298, 6 Pac. 291; *Attorney General* v. *Chicago N. W. Ry. Co.,* 35 Wis. 425; *Ditberner* v. *Chicago N. W. Ry. Co.,* 47 Wis. 138, 2 N. W. 69; *Leep* v. *St. Louis & I. M. Ry. Co.,* 58 Ark. 407, 41 Am. St. Rep. 109, 25 S. W. 75, 23 L. R. A. 264; *St. Louis I. M. & So. Ry. Co.* v. *Paul,* 64 Ark. 83, 62 Am. St. Rep. 154, 40 S. W. 705, 37 L. R. A. 504.) Generally, they have been sustained by the supreme court of the United States; that court accepting the construction given to the particular statute by the state court. In addition to the federal

cases already cited, see, also, *Missouri Ry. Co.* v. *Humes,* 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *St. Louis & S. F. Ry. Co.* v. *Mathews,* 165. U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611; *Minneapolis & St. L. Ry. Co.* v. *Beckwith,* 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; *Minneapolis & St. L. Ry. Co.* v. *Emmons,* 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; *Chicago R. I. & Pac. Ry. Co.* v. *Zernecke,* 183 U. S. 582, 22 Sup. Ct. 229, 46 L. Ed. 339.

In Iowa, Indiana and Colorado the theory upon which the respective statutes are sustained is that, though they are in terms applicable to railway corporations only, the general purpose of them is to protect the employees subject to the hazards of the particular employment, and that they are broad enough, when interpreted in the light of this general purpose, to include and bring within their reach natural persons, or associations of them other than corporations, when they engage in the same business. Hence, the classification is not made upon a discrimination between persons of the same class, but between different classes of business. The same conclusion is stated in *Schus* v. *Powers-Simpson Co.,* 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887.

In *Herrick* v. *Minneapolis & St. L. Ry. Co.,* supra, however, the decision is based upon the theory that the corporation is a creature of the statute; hence, that the legislature, as a matter of state policy, may impose upon it such additional liabilities and burdens as it chooses.

Our own statute is susceptible of the construction given to the statute of Iowa, Indiana and Colorado, by the courts of those states. The general purpose of it is, as indicated by its title and the character of the provisions embodied in it, to secure the safety of employees, and thus, indirectly, of the public. Assuming that the expression "railway corporation" is used in a general sense, the design being to include all persons engaged in operating railways, it would be free from all objection. And this might be done under the rule of construction that, having ascertained the general purpose of a statute, to give effect to this general purpose, general words may be restricted to a par-

ticular meaning, or those of a restricted meaning may be expanded so as to embrace the general purpose and effectuate it. (2 Lewis' Sutherland on Statutory Construction, 247.) And we might well adopt this construction and rest the validity of the statute upon it. This conclusion, of course, implies that, if the terms of the first section of the statute are such that it must upon any reasonable construction be held to apply to railway corporations exclusively, it would be open to the constitutional objection, because it would make an unfair discrimination against railroad corporations. Perhaps, under the principles declared in the Dartmouth College Case (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. (U. S.) 578, 4 L. Ed. 629), complaint could be made that such a discrimination would deprive a corporation of the equal protection of the laws, and thus would impair the obligation of their contract with the state. But most of the states, after that decision, followed the suggestion made by Mr. Justice Story, and either in their grant of charters to corporations under special or general laws, or in their Constitutions, reserved the power to alter, amend, or repeal such charters or the general laws on the subject. Our Constitution makes this reservation in unmistakable terms:

"Sec. 2. No charter of incorporations shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state; but the legislative assembly shall provide by general law for the organization of corporations hereafter to be created; *Provided,* that any such laws shall be subject to future repeal or alterations by the legislative assembly." (Const., Art. XV.)

"Sec. 3. The legislative assembly shall have the power to alter, revoke or annul any charter of incorporation existing at the time of the adoption of this Constitution, or which may be hereafter incorporated, whenever in its opinion it may be injurious to the citizens of the state." (Const., Art. XV.)

This reservation is of a substantive right (*Attorney General* v. *Railway Cos.*, 35 Wis. 425), and means that, if the legislature

deems it expedient, it has the power of destruction of the corporate body. In *Spring Valley Water Co.* v. *Schottler,* 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173, the supreme court of the United States, speaking through Chief Justice Waite, said: "The Spring Valley Company is an artificial being created by or under the authority of the legislature of California. The people of the state, when they first established their government, provided in express terms that corporations, other than for municipal purposes, should not be formed except under general laws, subject at all times to alteration or repeal.   *   *   *   In California the Constitution put this reservation into every charter, and consequently this company was from the moment of its creation subject to the legislative power of alteration, and, if deemed expedient, of absolute extinguishment as a corporate body." This was said of an Act of the legislature which took away from corporations, organized under a general statute to supply cities and towns with water, the power to fix their rate charge, and lodged it in the municipal authorities. This would seem to be taking away from these bodies the liberty of contract on equal footing with other persons; but the legislation was held to violate "no provision of the Constitution of the United States."

A statute of the state of Arkansas declared that "whenever any railroad company or any company, corporation or person engaged in the business of operating or constructing any railroad or railroad bridge, or any contractor or subcontractor, engaged in the construction of any such road or bridge, shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of any such servant or employee, then earned at the contract rate, without abatement or deduction, shall.be, and become due and payable on the day of such discharge, or refusal to longer employ; and if the same be not paid on such day, then, as a penalty for such nonpayment, the wages of such servant or employee shall continue at the same rate until paid. *Provided,* such wages shall not continue more than sixty days, unless an action therefor shall

be commenced within that time." The law having been invoked
by an employee who had been discharged by a railroad corpo-
ration, which refused to pay wages then due, it was held to be
a valid exercise of legislative power, so far as it applied to
corporations, under a reservation of the state Constitution
identical with that of our own, and amounted to an amendment of
the charter of the corporation. (*Leep* v. *St. Louis etc. Ry. Co.*,
58 Ark. 407, 41 Am. St. Rep. 109, 25 S. W. 75, 23 L. R. A. 264.)
This Act was considered by the supreme court of the United
States in *St. Louis etc. Ry. Co.* v. *Paul*, 173 U. S. 404, 19 Sup.
Ct. 419, 43 L. Ed. 746. The court held that it did not violate
any provision of the Fourteenth Amendment, and said: "Cor-
porations are the creations of the state, endowed with such facul-
ties as the state bestows and subject to such conditions as the
state imposes, and, if the power to modify their charters is re-
served, that reservation is a part of the contract, and no change
within the legitimate exercise of the power can be said to impair
its obligation; and as this amendment rested on reasons deduced
from the peculiar character of the business of the corporations
affected and the public nature of their functions, and applied
to all alike, the equal protection of the law was not denied."

Corporations are persons (*State ex rel. Sackett* v. *Thomas*, 25
Mont. 226, 64 Pac. 503; *Santa Clara County* v. *Southern Pac.
Ry. Co.*, 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed..118; *Pembina
Con. Silver M. Co.* v. *Pennsylvania*, 125 U. S. 181, 8 Sup. Ct.
737, 31 L. Ed. 650), but not for all purposes. They have no
inalienable rights. Being creatures of the statute, if the
reservation in the Constitution means anything, it means that
the legislature—the law-making power—may enact any legisla-
tion with reference to them, by way of amendment of the law
creating them, which does not violate the rule laid down in *St.
Louis etc. Ry. Co.* v. *Paul, supra,* that property acquired under
the operation of the charter cannot be taken away and that con-
tracts made in like manner may not be impaired.

It cannot be doubted that the legislature, in enacting the gen-
eral laws on the subject (Civ. Code, Div. I, Pt. IV), might

have incorporated in them the section of the Act of 1903 in question. It would then have been a part of the charter of every railroad company organized under the laws of this state. The defendant is a foreign corporation, having come into this state to operate a railroad. It cannot occupy any higher ground than a domestic corporation engaged in the same kind of business. (Const., Art. XV, sec. 11.) If the legislature in its discretion concluded that it would secure the safety of railroad employees, and thus stimulate these corporations to exercise a greater care in selecting them, so that the safety of themselves and of the passengers and freight would be better guarded, it had the power to enact legislation necessary to accomplish that purpose, and foreign corporations, as well as domestic, must obey it.

We hold that the law in question is a valid exercise of legislative power, and is not open to the constitutional objection made.

Counsel, however, have called our attention to the case of *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, and insist that it supports their contention. A statute of Texas imposed a fee not to exceed $10, in addition to costs, upon railway corporations which failed to pay *bona fide* claims for personal services rendered, or labor done, or for damages, or for overcharges for freight, or for stock killed or injured by trains, within thirty days after presentation at the proper station of the road. The Act applied to no other corporation or person. The Texas court held it valid. But on error the supreme court of the United States held it unconstitutional as denying the equal protection of the laws. The statute can, in principle, be readily distinguished from the one now under consideration. It imposed a penalty upon the railroad corporations only for failure to pay their debts promptly, exempting other corporations and natural persons, whereas a like duty rested upon all. It therefore ignored the rule of equality and made an arbitrary classification for purposes not falling properly under the scope of the police power of the state, upon the theory of a special duty resting upon railroad corporations by reason of the peculiar character of the business in which they were engaged.

The same may be said of the case of *State v. Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 82 Pac. 833. In this case was involved the question whether the statute prohibiting monopolies in this state was in violation of the Fourteenth Amendment, by reason of the fact that it expressly excepted from its operation combinations for the purpose of enhancing the price of horticultural and agricultural products. The statute was highly penal. The exception created an arbitrary classification by which some persons engaged in industrial pursuits were punished for creating monopolies, while others, who occupied the same relation to these pursuits, were expressly exempted. Neither of these cases is applicable here.

2. Counsel contend that the award by the jury of $17,400 for the loss of the left hand is so manifestly excessive that it is apparent that the jury acted from passion and prejudice; that the state of mind thus exhibited must have influenced the jury in determining the question of liability against the defendant from evidence upon which they might have found in its favor; and hence a case is presented in which the inherent vice of the verdict cannot be cured by a reduction of the amount of it.

It was said in *Helena & Livingston S. & R. Co.* v. *Lynch,* 25 Mont. 497, 65 Pac. 919: "Courts are reluctant to interfere with the verdict of a jury, and will not do so, on the ground of excessive damages given under the influence of passion and prejudice, unless it is apparent that their feelings of passion and prejudice have entered into and influenced their decision. Where it is apparent that this is the case, a new trial should be granted, unless it is also apparent that the verdict is otherwise correct, and the ends of justice will be fully served by requiring the successful party to remit the excess. In the latter case, however, it should appear that upon the facts the successful party is clearly and as a matter of law entitled to a verdict in some amount, and that the prejudice and passion of the jury have gone no further than to lead them to swell the amount of damages; otherwise, all their deliberations must be deemed to have been permeated by their feelings, and the decision as a whole the

result of passion, rather than of their calm, deliberate judgment.''

The evidence touching the question whether the injury resulted from the negligence on the part of the engineer, or from the act of the plaintiff in assuming a position more dangerous than was necessary, is conflicting; but it is sufficient to sustain the finding of the jury on this point. If the verdict had been for $5,000, we apprehend there would be no complaint.

Can it be said that the comparatively large amount found is, of itself, sufficient to make it apparent that the jury were prompted by improper motives? In all such cases the amount to be awarded is left to the jury, under the facts of the particular case. This discretion covers a very wide range. The court cannot lay down any definite or fixed standard of measurement. One jury upon the same facts will award one amount, and another a larger one; yet both may come within the limits of fair discretion. In any case, the amount allowed may not be held to be determinative, unless it be so outrageously disproportionate to the injury as to shock the moral sense. (*Yellowstone Park R. R. Co.* v. *Bridger Coal Co.*, 34 Mont. 545, 115 Am. St. Rep. 546, 87 Pac. 963; *Wilson* v. *Fitch*, 41 Cal. 363.)

In a given case, it may be that the amount awarded is due to miscalculation, or based upon a wrong standard. In such cases the excessive award is not the result of passion or prejudice, but the result of an honest mistake; and in any case there is no presumption of wrongdoing, unless the award is so grossly out of proportion to the injury, looking to all the circumstances, as that it cannot be otherwise accounted for; for the statute (Code Civ. Proc., sec. 1171, subd. 5) allows a new trial on the ground of passion or prejudice, only when one or the other is apparent.

In this case the court instructed the jury that in fixing the amount of damages, if they found the defendant liable, they should take into consideration mental and physical pain suffered and to be suffered, the disfigurement of plaintiff's per-

son, and the impairment of his earning ability. There is no complaint made of the instructions. Evidence was submitted showing that the plaintiff was earning at the time of the injury $100 per month, and that the expectancy of a man of his age (37) was 29.44 years. Evidence was further introduced showing the cost of an annuity of $100, payable annually, semi-annually, or quarterly. The lowest price fixed was upon the basis of annual payment, and was $1,767. It was also shown that the plaintiff can now earn not to exceed $600 per year. Accepting this as the basis of calculation, the impairment of capacity amounts to $600 per year. Multiply the cost of an annuity of $100 by this amount, and the result is $10,602, allowing nothing for other elements of damage. It is more likely that the jury found, as they might have done, that the impairment of earning capacity was greater, and hence for this reason increased the amount, making no allowance for the impairment of earning capacity by reason of increasing age. To say the least, the amount of the award is well within the purview of the evidence as it was submitted to the jury. Any excess may just as well have been the result of the adoption of the annuity standard submitted to them, as it was, under the instructions, without a direction that they should also consider the fact that earning capacity diminishes as age advances. The circumstances do not make so clearly apparent the presence of bias or prejudice as to warrant a new trial on this ground.

The action of the trial court in granting the motion conditionally is justified by the case of *Kennon* v. *Gilmer*, 9 Mont. 108, 22 Pac. 448. Looking to all the evidence in the case, the court might very well, in its discretion, pursue the course that was adopted in that case, and diminish the amount of the verdict as it did. It doubtless proceeded upon the theory that the large amount of the award was due to a mistake in the basis of calculation.

This court, in *Bourke* v. *Butte El. & P. Co.*, 33 Mont. 267, 83 Pac. 470, declared the rule that compensation for impaired ability to earn money should be made upon the principle that

the plaintiff is entitled to an annuity equal to the difference between his annual earnings before his injury, and the amount, if any, he might be able to earn thereafter. This statement of the rule excludes the element of advancing age, which should always be taken into account where earning capacity depends upon physical strength. Necessarily, a man's physical condition becomes impaired by advancing age, and, as a consequence, his earning power is diminished thereby.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Smith concur.